## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOCELYN HEMPHILL,
          **Plaintiff,**

    **v.**

NATIONSTAR MORTGAGE LLC;
EVERBANK; and MILSTEAD &
ASSOCIATES, LLC,
          **Defendants.**

CIVIL ACTION

NO. 18-2451

## MEMORANDUM OPINION

Plaintiff Jocelyn Hemphill ("Plaintiff") asserts claims under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and state law against Defendants Nationstar Mortgage LLC, Everbank, and Milstead & Associates, LLC (collectively, "Defendants"), stemming from their roles in various foreclosure proceedings against her. Plaintiff alleges principally that Defendants made false representations throughout the foreclosure litigation regarding the ownership status of her mortgage, charged excessive fees, and misled her as to the financial implications of a loan modification program. Counts One and Two of her Amended Complaint assert FDCPA claims against Nationstar and Milstead, respectively. Counts Three, Four and Six assert state law claims for unfair trade practices, breach of contract, and violations of Pennsylvania's Loan Interest and Protection Law against Nationstar and Everbank. Count Five asserts a state law claim of constructive fraud against Nationstar only. Defendants have filed motions to dismiss each of the claims against them. Nationstar and Everbank further move, pursuant to Federal Rule of Civil Procedure 12(f), to strike certain allegations in the Amended Complaint. For the reasons that follow, Defendants' motions are granted in part and denied in part.

# I. BACKGROUND

This case centers on three separate but interlocking foreclosure actions taken against Plaintiff between 2009 and 2018. All three of these actions are now closed. Plaintiff's mortgage changed hands many times, passing between different financial institutions and loan servicers. Each foreclosure action involved distinct actors, who filed sometimes competing foreclosure claims. The debt alleged in these foreclosures ballooned many thousands of dollars over the years. Plaintiff's Amended Complaint does not provide any factual allegations regarding the current status of her mortgage, nor does it detail any payments that she has made in connection with the mortgage or the foreclosure actions.

## A. Facts

Plaintiff obtained a mortgage for her Philadelphia home in 1986 for $33,216. In 2008, Plaintiff received the first of several notices of intention to foreclose.[1] In October 2009, Everbank initiated the first foreclosure action against Plaintiff (the "First Foreclosure"), seeking a total amount of $69,633.95. In September 2010, Everbank obtained a default judgment in the amount of $74,219.89.

In December 2010, Aurora Loan Services, LLC sent Plaintiff another notice of intention to foreclose on the same mortgage. Subsequently, Aurora vacated the judgment obtained by Everbank. In March 2011, Aurora filed its own foreclosure complaint in the Philadelphia Court of Common Pleas (the "Second Foreclosure"), and ultimately obtained a default judgment in December 2011. Plaintiff then hired an attorney, moved to open the judgment, and began litigating the Second Foreclosure action. At some point thereafter, Nationstar began servicing the mortgage, and was substituted for Aurora as the plaintiff in the Second Foreclosure.

---

[1] This notice, unlike subsequent notices, was sent by Countrywide Home Loans Servicing LP.

In October 2013, Nationstar sent Plaintiff yet another notice of intention to foreclose on her mortgage. This notice also included a fee for a "Corporate Advance Balance" of $11,064.55, which Plaintiff alleges in fact represented attorney fees incurred during the foreclosure actions taken by Everbank, Aurora, and Nationstar.

On July 2, 2014—while the Second Foreclosure remained pending—Nationstar, represented by Milstead & Associates, LLC, brought yet another foreclosure action (the "Third Foreclosure") in the Philadelphia Court of Common Pleas. Nationstar alleged the same default as the prior two foreclosure actions, but sought a total of $99,126.17. Nationstar attached a copy of the mortgage note to the complaint in the Third Foreclosure. Plaintiff avers that this copy was falsified to remove markings indicating that it was not the original mortgage note. On September 16, 2014, Nationstar filed a new copy of the note, which Plaintiff alleges was similarly falsified.

In November 2014, Nationstar sought to discontinue the Second Foreclosure.

The Third Foreclosure then proceeded to the Residential Mortgage Foreclosure Diversion Program within the Philadelphia Court of Common Pleas, where it remained until July 13, 2016. Plaintiff alleges that Nationstar encourages borrowers—and encouraged her specifically, through telephone calls, mail, and in person contact—to participate in the Diversion Program, in part by representing that no costs or fees would be charged for participation. But Nationstar and Milstead ultimately assessed Plaintiff over $5,000 in fees related to the program. Plaintiff's participation in the Diversion Program required her to take time off work and travel to conferences.

At some point during the Third Foreclosure litigation, Plaintiff filed objections to Nationstar's complaint. In response, Nationstar admitted for the first time that it never possessed the mortgage note, but instead held a "Lost Note Affidavit."

Nevertheless, on June 29, 2017, Nationstar, through its counsel, Milstead, filed for summary judgment in the Third Foreclosure action, and asserted that it was "entitled to enforce the Mortgage by way of its possession of the original note." In support of the motion, Milstead also submitted a statement of uncontested facts and an affidavit from a Nationstar employee, both claiming that Nationstar had possession of the note.

On September 8, 2017, Nationstar produced a corporate designee for deposition. The designee initially claimed that Nationstar held the original note, which he had reviewed, before later changing his testimony and admitting that Nationstar in fact did not have possession of the note.

On December 4, 2017, Nationstar filed a second motion for summary judgment, which included an affidavit admitting that it did not have possession of the mortgage note—but asserting that it nonetheless was entitled to judgment. The motion also sought to collect an additional $20,000 in fees incurred during the three foreclosure actions against Plaintiff. These fees included, for the first time, the legal fees for Plaintiff's participation in the Diversion Program.

On February 20, 2018, after the close of discovery, Nationstar provided supplemental discovery responses, and disclosed that in fact it did not own the mortgage; Everbank did.

The Third Foreclosure was scheduled for trial on February 27, 2018, at which point the court advised that Nationstar may well lose the suit if it proceeded. Nationstar motioned for a voluntary nonsuit, and conceded that it lacked standing to foreclose. The court granted the motion and entered a voluntary nonsuit on February 28, 2018.

The Amended Complaint does not contain allegations regarding the status of the mortgage following the entry of the voluntary nonsuit.

### B. Procedure

Plaintiff commenced this action by filing a praecipe for a writ of summons on Nationstar on September 26, 2017 in the Philadelphia Court of Common Pleas. Plaintiff filed an affidavit of service on Nationstar on November 9, 2017. On May 11, 2018, Plaintiff filed her complaint, which included charges against Everbank and Milstead, as well as Nationstar. On June 11, 2018, Milstead removed the matter to federal court.

## II.    LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). The court must "construe the complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

## III.    DISCUSSION

### A. FDCPA Claims against Nationstar and Milstead (Counts One and Two)

Plaintiff alleges that various actions taken by Nationstar and Milstead, principally during the Third Foreclosure, violated the FDCPA. Plaintiff does not disaggregate her FDCPA claims into independent counts, based on individual statements or actions. Instead, she asserts one FDCPA claim against Nationstar, and another against Milstead, but lists several categories of actions in support of the claim. Specifically, Plaintiff points to unreasonable and improperly labeled attorney fees, as well as misrepresentations made during litigation about the status of the

mortgage note, including in falsified documents submitted to the court, among other statements.

Defendants assert that the FDCPA claims must be dismissed as time-barred in that Plaintiff has not alleged a violation that is sufficiently independent from the act of filing for foreclosure. In their view, all the statements of which Plaintiff complains, even those statements occurring in the last year, relate to the foreclosure litigation, and thus accrued at the latest in 2014 when the Third Foreclosure was filed. Defendants do not isolate any specific statements or categories of statements in their argument; rather, they argue broadly, to the effect that all statements must relate to the filing of the foreclosure since they occurred during the course of litigation.

As a general rule, "a complaint need not anticipate or overcome affirmative defenses," such as a statute of limitations, *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014), and, accordingly, "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

The FDCPA provides a one-year statute of limitations, which runs from "the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, 890 F.3d 422, 424 (3d Cir. 2018). Where, as here, a plaintiff asserts FDCPA claims related to foreclosure litigation, discerning the applicable limitations period can be a thorny inquiry. Actions taken during litigation may give rise to FDCPA violations. *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 177 (3d Cir. 2015) (explaining that, apart from specific exceptions, the text of the FDCPA and its legislative history "suggest that *all* litigation activities, *including* formal pleadings, are subject to the FDCPA") (emphasis in original, internal brackets omitted). But some debate remains about how the nature of a claim arising during litigation affects the

applicable limitations period.

In an unpublished and therefore non-precedential opinion, the Third Circuit found that FDCPA claims "premised upon allegations of improper pursuit of debt collection litigation" will accrue at the latest upon service of the complaint, and that, generally, "participation in ongoing debt collection litigation" will not constitute a continuing violation that extends the limitations period as the litigation unfolds.  *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 130-31 (3d Cir. 2009).  Thus, where an FDCPA claim challenges the propriety of a debt collection suit, *Schaffhauser* supports the notion that the claim accrues at latest upon service of the debt collection complaint.

However, discrete actions taken during litigation may constitute independent violations of the FDCPA—separate and apart from any FDCPA claims challenging the propriety of the litigation as a whole—and carry their own limitations period.  *See, e.g.*, *Brown v. Udren Law Offices PC*, 2011 WL 4011411, at *6 (E.D. Pa. Sept. 9, 2011) ("Conduct which independently violates the FDCPA . . . is actionable if it falls within the limitations period, even if undertaken in pursuit of litigation that was filed outside the limitations period."); *Strader v. U.S. Bank Nat'l Ass'n*, 2018 WL 741425, at *12 (W.D. Pa. Feb. 7, 2018) ("If otherwise timely or 'fresh' violations of the FDCPA were forced to relate back to the date of the filing of the debt collection action, attorneys would, in essence, have immunity for any FDCPA violations committed within one (1) year of the later federal filing if the debt collection began more than one (1) year before the federal filing.").  The Third Circuit has not yet addressed such an independent FDCPA violation, but it should be noted that *Schaffhauser* affirmed a district court decision recognizing the possibility of an independent violation.  *See Schaffhauser v. Burton Neil & Assocs.*, 2008 WL 857523, at *3 (M.D. Pa. Mar. 27, 2008) ("For conduct during litigation to be actionable, a

plaintiff must allege, and on summary judgment offer proof, that the conduct is a violation of the FDCPA independent of the act of filing suit.").

Where an action within the limitations period is "bound up with the Foreclosure Action," but "is not a violation *predicated upon the filing* of a Foreclosure Action," it may independently give rise to an FDCPA claim. *Strader*, 2018 WL 741425, at *16 (emphasis added). Accordingly, filings or statements made during litigation generally will not give rise to an independent FDCPA violation in the absence of "new or additional misstatements." *Simard v. LVNV Funding, LLC*, 2011 WL 4543956, at *6 (D. Mass. Sept. 28, 2011). Independent violations may be found where, for example, a defendant fails to provide required disclosures regarding the nature of the debt during litigation, *Strader*, 2018 WL 741425, at *15, or where the defendant misrepresents the nature of the debt in specific filings, *Brown*, 2011 WL 4011411, at *6.

Applying this jurisprudential framework to the Amended Complaint leads to the conclusion that it presents factual allegations, which, if true, could constitute independent violations of the FDCPA during the limitations period. For example, Plaintiff avers that on December 4, 2017, Nationstar, through its counsel Milstead, filed its second motion for summary judgment, which included—for the first time—an assessment for attorney fees that Plaintiff alleges she did not actually owe, and which all related to her participation in the Diversion Program over a year earlier. The alleged misstatement regarding the fees had previously gone unmentioned by Defendants, and thus was a novel representation of Plaintiff's debt. Further, by challenging the new fees, Plaintiff is not challenging the validity of the foreclosure action generally. Rather, Nationstar's statement "conceivably misrepresented the amount of the debt owed, forming a basis for violations of § 1692e(2)(A) and (10)." *Kaymark*, 783 F.3d at 175.

8

Accordingly, this statement is sufficiently distinct from the debts initially asserted in the foreclosure complaint as to support an independent claim. Moreover, the statement falls within the limitations period. Since Plaintiff filed her initial complaint on May 11, 2018, and the statement was made in the second summary judgment motion filed on December 4, 2017, the statement falls within the one-year statute of limitations provided by the FDCPA, and is timely asserted in this action.

Separately, Plaintiff also points to Nationstar's disclosure at some point during the Third Foreclosure litigation that it did not possess the original mortgage note. Following that disclosure, on June 29, 2017 and subsequently, Nationstar and Milstead asserted that Nationstar *did* in fact hold possession of the mortgage note. If proven, these subsequent statements also would provide the foundation for an independent violation of the FDCPA under 15 U.S.C. § 1692e. The statements were new assertions that Nationstar possessed the note, made to the court soon after Nationstar and Milstead admitted, and thus were fully aware, that the exact opposite was true. Accordingly, these late mischaracterizations by Nationstar and Milstead were "fresh" statements—which contradicted statements made immediately prior—and thus are not inherently tied to filing of the Third Foreclosure complaint. *Strader*, 2018 WL 741425, at *12. Finally, all these statements were made after June 29, 2017, and fall within the limitations period. Accordingly, these statements could provide the basis for a timely, independent FDCPA claim.

Defendants argue for a blanket rule that misrepresentations made during litigation are tied to the filing of that litigation, and cannot give rise to an independently actionable FDCPA claim. For support, Defendants cite a string of cases where district courts found that consistent statements made throughout the normal course of litigation did not create independently actionable FDCPA violations—even if the statements, when made at the outset of litigation,

would have been cognizable.  *See, e.g.*, *Simard*, 2011 WL 4543956; *Schaffhauser*, 2008 WL 857523; *Parker v. Pressler & Pressler, LLP*, 650 F. Supp.2d 326 (D.N.J. 2009).  The present case is distinguishable from the cases cited, however, because Nationstar's statements regarding its possession of the note cannot be regarded as an ordinary incident of litigation.  To the contrary, Nationstar was flip flopping about its ability to maintain the suit.  These late statements were inconsistent with Nationstar's prior representations, and asserted possession immediately after disclaiming possession.  Thus the driving consideration in the cases Defendants cite—that the plaintiff had notice of a consistent, actionable statement by the defendant—is inapt here.

Accordingly, Defendants' motions to dismiss the FDCPA claims as untimely are denied.

### B.  State Law Claims

Plaintiff brings four Pennsylvania law claims against Nationstar and Everbank, for unfair trade practices, breach of contract, constructive fraud, and violations of consumer protection law, all of which Defendants seek to dismiss.

### i.  Unfair Trade Practices (Count Three)

Plaintiff alleges that Nationstar and Everbank engaged in "fraudulent or deceptive conduct," in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201–1, *et seq.*  Specifically, Plaintiff asserts that Nationstar's representations that the Diversion Program was free violated the UTPCPL's catch-all provision, which prohibits any "fraudulent or deceptive conduct."  73 P.S. § 201-2(4)(xxi).  Plaintiff alleges that these representations were false because Defendants ultimately charged her additional legal fees stemming from her participation.  Plaintiff does not allege, however, that she paid any of these disputed fees.

Nationstar and Everbank assert that this claim fails on several grounds.  First, they argue

that Plaintiff has failed to allege an "ascertainable loss" as required under the UTPCPL. "To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) 'ascertainable loss of money or property, real or personal,' (2) 'as a result of' the defendant's prohibited conduct under the statute." *Kaymark*, 783 F.3d at 180 (quoting 73 P.S. § 201–9.2(a)). Such a loss cannot be speculative, and "must be established from the factual circumstances surrounding each case." *Id.* (citation omitted). "[T]he test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. Thus damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." *Id.* at 181 (citation and internal ellipses omitted). In *Kaymark*, the Third Circuit assumed for purposes of argument that improperly inflated fees violated the UTPCPL, but found that a plaintiff, who had not paid any portion of the improper fees, had not suffered an ascertainable loss. *Id.* at 180-81.

Here, Plaintiff alleges two types of losses: forgone wages and travel expenses, incurred as a result of her participation in the Diversion Program, and additional legal fees charged to her by Defendants as part of her mortgage-related debt. Since Plaintiff does not allege that she paid any part of the additional legal fees, under *Kaymark*, the unpaid charges cannot support a UTPCPL claim. 783 F.3d at 181. On the other hand, forgone wages and travel expenses, if established, would be concrete and identifiable—that is, not speculative. However, these losses represent the costs that Plaintiff incurred as a result of her specific circumstances, and thus appear somewhat remote from Defendants' actions. These expenses were not, for example, required by the Diversion Program as a condition of participation. Thus it is not entirely clear that Plaintiff incurred these losses "as a result" of Nationstar and Everbank's UTPCPL violation. However, Nationstar and Everbank have not crafted a nonconclusory argument or pointed to case law

indicating that these losses do not suffice as "ascertainable losses" under the UTPCPL. Accordingly, the Court declines to dismiss the claim on this ground in the absence of fuller briefing from the parties.

Nationstar and Everbank next argue that Plaintiff has failed to plead all the elements of common law fraud, as required to state a claim under the UTPCPL's catch-all provision. There is some degree of debate as to whether a plaintiff bringing a claim under the UTPCPL's catch-all provision must allege all the elements of common law fraud, but a recent decision from the Pennsylvania Supreme Court indicates that there is no such requirement. An earlier iteration of the catch-all provision referred only to 'fraudulent conduct,' prompting courts to conclude that any claim under that provision incorporated all the elements of common law fraud. *See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 152-53 (Pa. Super. 2012). But the provision was amended in 1996 to include 'deceptive conduct,' and many courts, including this one, have held that this amendment expanded liability and eliminated the requirement that a plaintiff plead common law fraud. *See id.* at 154; *see also Walkup v. Santander Bank, N.A.*, 147 F. Supp.3d 349, 361 (E.D. Pa. 2015) (plaintiffs "need not plead the elements of common law fraud to state a claim under the catch-all provision of the UTPCPL"). The Third Circuit, however, in unpublished opinions, has continued to require "plaintiffs who seek to establish a claim under this [catch-all] provision to prove the elements of common law fraud." *Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 188 (3d Cir. 2017); *see also Ries v. Curtis*, 664 F. App'x 206, 210 (3d Cir. 2016). Recently, the Pennsylvania Supreme Court seems to have endorsed the view that the 1996 amendments obviate the need for a plaintiff to plead all the elements of common law fraud, by citing approvingly to this Court's decision holding as much, and differentiating between pre- and post-1996 pleading requirements. *See Yenchi v. Ameriprise*

*Fin., Inc.*, 161 A.3d 811, 816 n.4 (Pa. 2017) (citing *Walkup*, 147 F.Supp.3d at 361). It should be noted the issue was not sharply focused for review in *Yenchi*, since the potential common law fraud requirement was not raised by the appellants. *Id.* Nonetheless, in light of this recent discussion from the highest state court, the Court again holds a plaintiff asserting a UTPCPL claim under the catch-all provision need not plead common law fraud.

For these reasons, Nationstar and Everbank's motion to dismiss the UTPCPL claim is denied.

## ii. Breach of Contract (Count Four)

Plaintiff asserts that Nationstar and Everbank breached their obligations under the mortgage note by "imposing fees, costs and other charges on Hemphill well in excess of the limits imposed by the terms of their agreement," and violating the implied covenant of good faith and fair dealing.[2] As in the UTPCPL claim, Plaintiff avers that she suffered damages in the form of increased fees charged by Defendants, and expenses "related to Hemphill's attempts to participate and apply for loss mitigation." Nationstar and Everbank argue that Plaintiff's breach of contract claim fails as a matter of law, and is untimely as against Everbank.

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). "In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between

---

[2] In her brief, Plaintiff asserts that Nationstar and Everbank breached two separate contractual duties: first, to abide by the terms of the attorney fee provision, and second, good faith and fair dealing. However, Pennsylvania law generally does not recognize an independent contractual claim for breach of the implied duty of good faith; rather, it is "an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000). Therefore, Plaintiff's claim is best considered as asserting only one breach: failure to abide by the attorney fee provision in the mortgage note.

the breach and the loss." *Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 226 (Pa. Super. 1991).

Nationstar and Everbank argue that Plaintiff fails to sufficiently allege the terms of the contract. They assert that the mortgage note contained no limitation for fees and costs, and that Plaintiff has not pointed to any terms in the mortgage note that might establish such a limitation. Plaintiff did not set out in her Amended Complaint the precise terms of the mortgage note governing fees and costs. She did, however, append a copy of the mortgage note to her complaint, though it is nearly illegible due to the poor quality of the copy. In her briefing, Plaintiff has set out the text of the provision in the mortgage note regulating fees and costs, which appears at Section 9 of the attached document, and does indeed appear to constrain the availability of attorney fees. Although more specific factual allegations—and a better quality copy of the mortgage note—would have been useful, Plaintiff nonetheless has provided sufficient material to allege the existence of a contract and its essential terms. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (permitting consideration of documents that are "integral to or explicitly relied upon in the complaint" regardless of whether such documents are explicitly cited in the complaint).

However, Plaintiff has not sufficiently alleged resultant damages. First, as with the UTPCPL claim, the unpaid fees cannot support a breach of contract claim. *See Kaymark*, 783 F.3d at 183 (holding that unpaid, disputed fees do not suffice as resulting damages in breach of contract claim). Second, the expenses incurred during the Diversion Program were sufficient to undergird Plaintiff's UTPCPL claim in the absence of focused argument, but are insufficient to support her breach of contract claim. This is because the Amended Complaint does not include factual allegations indicating a causal relationship between those particular expenses and

Nationstar and Everbank's breach.

In her briefing, Plaintiff argues that she has sufficiently alleged damages because Defendants are effectively "hold[ing] the title to her home hostage," and that "her title will only be returned upon payment of the sums secured by the mortgage." However, Plaintiff's Amended Complaint does not include allegations that support these assertions. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). There is simply nothing in the Amended Complaint detailing the current status of the mortgage note. Nor are there allegations regarding any actions taken by Defendants following the voluntary dismissal of the Third Foreclosure. Rather, per the Amended Complaint, Defendants and others have instituted three foreclosure proceedings against Plaintiff, each of which was closed without forcing Plaintiff to pay any fees. In the absence of allegations, the Court will not consider the potential viability of such damages.

As to Everbank, the claim fails for the separate reason that Plaintiff has not alleged that Everbank itself breached the terms of the mortgage by charging any excessive fees. According to the complaint, it was Nationstar, not Everbank, that assessed all the excessive fees related to the Diversion Program. Everbank, by contrast, initiated and won a default judgment in the First Foreclosure, which was vacated in 2010. Plaintiff does not allege that any improper fees were charged specifically during the First Foreclosure. And, per the allegations in the Amended Complaint, Everbank had nothing further to do with the mortgage or foreclosure actions until 2018, when Nationstar stated that Everbank in fact owns the mortgage, and Nationstar does not. In her briefing, Plaintiff asserts that Nationstar has indicated it is servicing the mortgage on behalf of Everbank; thus Everbank "is principal to Nationstar and, therefore, is liable for Nationstar's breach." Her complaint, however, does not contain such allegations. *See*

*Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 F. App'x 811, 819 n.4 (3d Cir. 2004) (rejecting theories pressed in briefing but omitted from complaint because, "[o]f course, a contention in a brief clearly may not be used to substitute for an allegation in a complaint") (quoting *Williams v. New Castle County*, 970 F.2d 1260, 1266 n.4 (3d Cir. 1992)) (internal quotation marks and ellipses omitted).

Accordingly, Plaintiff's breach of contract claim shall be dismissed.

### iii.  Constructive Fraud (Count Five)

Plaintiff's fifth cause of action is against Nationstar only, for constructive fraud.  In Pennsylvania, a constructive fraud claim requires a false statement (or omission) on which the other party acts to his injury, without the element of dishonest intent."  *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008).  Plaintiff bases her claim on Nationstar's "false and misleading representations" that the Diversion Program would be free of charge.

### a.  Gist of the Action

Nationstar and Everbank first argue that the claim must be dismissed because it is best understood as a contractual claim, and may not be asserted as a separate tort under the gist of the action doctrine.  Gist of the action allows courts to distinguish between tort and contract claims, and may preclude a plaintiff from asserting a tort claim that sounds in contract.  The Pennsylvania Supreme Court limned the contours of the doctrine in *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014), explaining that "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Id.* at 68.  The court continued,

> If the facts of a particular claim establish that the duty breached is one created by
> the parties by the terms of their contract—i.e., a specific promise to do something

that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* (citation omitted). The court took care to underscore that the "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim . . . as one for breach of contract." *Id.* at 69.

Applying those principles, the court held that an insurance claim brought by homeowners against the insurer was, on the facts of the particular claim, best considered a tort, rather than a contractual claim. *Id.* at 70. The claim related to mold found in the insured property. The terms of the insurance policy provided that the insurer would pay $5,000 "for the costs of testing and remediation of damage to the property," and the $5,000 in fact had been paid by the insurer to the homeowners in connection with the mold. *Id.* Thus the claim at issue did not assert that the insurer had failed to comply with the terms of the policy. Rather, the homeowners' allegations were "predicated on the allegedly negligent actions" of the insurer, "*while* they were performing [the insurer]'s contractual obligation to investigate" the homeowner's claim to mold coverage. *Id.* Specifically, the homeowners claimed that the insurer negligently "acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the [homeowners] that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances." *Id.* at 71. The court held that "these allegations of negligence facially concern [the insurer]'s alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself," thus, "[t]he policy in this instance merely served as the vehicle which established the relationship" between the parties. *Id.*

Following *Bruno*, the Third Circuit in *Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244 (3d Cir. 2017), analyzed a claim relating to a contract that required the defendant to obtain the plaintiff's consent prior to issuing stock. *Id.* at 249. The plaintiff claimed that the defendant fraudulently obtained its consent by omitting and misrepresenting information in documents that set out the basis for issuing stock. *Id.*; *see also id.* at 256. Applying *Bruno*, the Third Circuit reasoned that gist of the action did not bar the fraud claim because the claim "d[id] not arise from the contractual relationship between the parties, but rather from [the defendant's] fraudulent misrepresentations and omissions in seeking [the plaintiff]'s consent." *Id.*

Applying *Bruno* and *Norfolk* here, Plaintiff's fraud claim cannot be dismissed under gist of the action. As in both those cases, a contract between the parties created certain obligations bearing on the tortious claim. The mortgage note provided for the collection of some attorney fees and set out Plaintiff's payment obligations. But to the extent that Plaintiff's constructive fraud claim turns on the false representations by Nationstar that Plaintiff would not incur any fees or costs by participating in the Diversion Program, the alleged wrong does not stem from the failure to comply with the terms of the contract. Rather, as in *Norfolk*, the claim arises from Nationstar's misrepresentations and omissions, and therefore is cognizable in tort.

To the extent that the claim is premised on Defendants' charging fees in violation of the terms of contract, Nationstar and Everbank are correct that such an action is properly pursued in contract rather than tort. However, the fact that a separate breach of contract claim might *also* arise from the facts alleged does not necessarily bar recovery in tort. *See Skold v. Galderma Labs., L.P.*, 99 F. Supp.3d 585, 602 (E.D. Pa. 2015) ("Where the purported misrepresentation extends beyond a failure to adhere to any provision of the contract, a claim sounds primarily in tort and may be maintained concurrently with a breach of contract action.") (citation and internal

brackets omitted).  Read in the light most favorable to Plaintiff, the claim plausibly alleges a viable fraud claim separate from any claim arising from the breach of the terms of the mortgage note.

Accordingly, the constructive fraud claim is not barred by the gist of the action doctrine.

### b.  Other Arguments for Dismissal

Nationstar and Everbank next argue that the constructive fraud claim must be dismissed as untimely.  Under Pennsylvania law, claims for fraud are governed by a two-year statute of limitations.  42  Pa. C.S.A. § 5524; *see also United Nat'l Ins. Co. v. J.H. France Refractories Co.*, 668 A.2d 120, 121 (Pa. 1995).  The discovery rule provides a narrow exception to the statute of limitations, and will toll the limitations period "until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct."  *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005).

Plaintiff alleges that she participated in the Diversion Program between 2014 and 2016, and was not assessed any fees related to the Diversion Program until December 2017.  She argues that she could not have known that she incurred any fees in connection with the program before Nationstar charged them in 2017.  Nationstar and Everbank ask the Court to ignore Plaintiff's factual allegations to the effect that she did not know of the fees until 2017, and find that Plaintiff did in fact know of the fees much earlier, because Plaintiff received statements detailing the mounting fees.  But it is axiomatic that "in deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs."  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted).  Thus the Court will not entertain Nationstar and Everbank's counterstatement of the facts.  Plaintiff has, at this stage of the litigation, adequately alleged that improper fees were

charged within the limitations period, or that the discovery rule tolled her claim until December 2017.

Finally, Nationstar and Everbank assert that Plaintiff has not sufficiently alleged justifiable reliance on any misstatements made regarding the Diversion Program. However, Plaintiff avers that Nationstar pressed her to participate in the Diversion Program by saying at every turn that her participation would be free of charge. She further alleges that she relied on these statements in deciding to pursue the program. These allegations are sufficient to state justifiable reliance. *Cf. Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007) (finding sufficient evidence of justifiable reliance to preclude summary judgment where plaintiff claimed to have relied on defendant's inaccurate statements regarding term of insurance policy, without reading the policy itself).

Accordingly, Nationstar and Everbank's motion to dismiss the constructive fraud claim is denied.

### iv. Pennsylvania Act 6 (Count Six)

In her final cause of action, Plaintiff alleges that Nationstar and Everbank "contracted for and charged Hemphill unreasonable attorney fees prohibited under 41 P.S. § 406" of Pennsylvania's Act 6. Nationstar and Everbank argue that the claim must be dismissed, because Act 6 does not permit suit for unpaid fees.

"The Loan Interest and Protection Law, commonly referred to as 'Act 6,' is a consumer protection statute for residential mortgage debtors that provides an extensive program designed to avoid mortgage foreclosures." *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 308 (Pa. 2018) (citation and internal quotation marks omitted). Section 406, the provision at issue here, "limits the attorney's fees that a 'residential mortgage lender shall contract for or receive . .

. from a residential mortgage debtor.'" *Glover v. Udren Law Offices, P.C.*, 139 A.3d 195, 196 (Pa. 2016) (quoting 41 P.S. § 406). Under Section 406, lenders may only "contract for or receive" "reasonable and actually incurred" fees, in connection with certain legal proceedings. 41 P.S. § 406.

A plaintiff may assert a claim for a violation of Section 406 under either Sections 502 or 504 of Act 6. Section 502 provides that "[a] person who . . . . has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess . . . charges in a suit at law against the person who has collected such excess . . . charges." *Id.* at § 502. Separately, Section 504 provides:

> Any person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under law.

*Id.* at § 504.

Here again Plaintiff's claim presents the question of what to make of the fact that, although Defendants charged improper fees, she has not alleged that she paid them. Section 406 provides that "no residential mortgage lender shall contract for *or receive* attorney's fees" except as provided by the statute. *Id.* at § 406 (emphasis added). Because the disputed charges have gone unpaid, Plaintiff cannot maintain assert that Nationstar and Everbank "receive[d]" any improper fees, in violation of Section 406. Accordingly, Plaintiff's Act 6 claim must be confined to her allegation that Nationstar and Everbank "contracted for" unreasonable fees. The claim thus construed asserts that the terms of the mortgage note itself were unreasonable, in violation of Section 406.

Yet the effect of the unpaid fees does not end there. Nationstar and Everbank argue that unpaid fees are fatal to her Act 6 claim on the whole, because neither Section 502 nor 504

permits suit for unpaid fees. As Nationstar and Everbank point out, courts have generally held that the express language of Section 502 ("[a] person who . . . has paid charges") limits that section's reach to individuals who have paid some amount of disputed charges. *See, e.g.*, *Salvati v. Deutsche Bank Nat. Tr. Co.*, 575 F. App'x 49, 54 (3d Cir. 2014) ("Salvati has no remedy under § 502 because Salvati admittedly has not paid any portion of the allegedly unlawful fees or expenses."). But Nationstar and Everbank elide the distinction between Section 502 and 504. Section 504 speaks more broadly to "[a]ny person *affected* by a violation of the act." 41 P.S. § 504 (emphasis added). Thus Section 504 does not require that a plaintiff have paid any improper fees before bringing suit. *See Salvati*, 575 F. App'x at 54-55 ("Because § 504 does not contain § 502's requirement that the plaintiff 'ha[ve] paid' the charges and fees, this section might provide Salvati a remedy even if he never paid money to the defendants."). Rather, the text of Section 504 indicates that a plaintiff must show (1) a violation of the act, (2) that affected plaintiff, and (3) damages that occurred "by reason of such conduct." 41 P.S. § 504. Accordingly, the question again arises whether, on the facts alleged, Plaintiff has stated a sufficient basis to find damages.

The Pennsylvania Supreme Court has yet to parse the meaning of "damages" under Section 504, and few other courts have offered analysis. One district court has held that hiring an attorney to defend a foreclosure suit does not, by itself, establish damages under Section 504. *Hammill v. Bank of Am., N.A.*, 2013 WL 4648317, at *3-4 (W.D. Pa. Aug. 29, 2013), *aff'd*, 569 F. App'x 133 (3d Cir. 2014). Another case, *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338 (E.D. Pa. 2013), contains the most detailed discussion of the topic to date. Drawing largely on the interrelationship between Section 504 and other provisions of Act 6, the court "conclude[d] that the word 'damages' used in Section 504 encompasses only the actual loss of money or

property," and did not extend to unpaid inspection fees. *Id.* at 359. The court noted that the plaintiff would have suffered actionable damages if the unpaid fees had resulted in a lien or the loss of a home in foreclosure proceedings, both of which would "fall within the ambit of actual loss of money or property." *Id.*

Plaintiff here seeks to build on *Benner* to argue that Defendants are holding her mortgage "hostage" due to the unpaid fees, and thus she has suffered actionable property damages. However, as with the breach of contract claim, this argument fails because Plaintiff has not included any allegations in her Amended Complaint setting forth the current status of her mortgage. Therefore, the Court is unable to consider whether any such encumbrances on the mortgage may give rise to an actionable property loss.[3]

For the reasons given, the Act 6 claim must be dismissed for failure to plead damages.

### C.  Motion to Strike Allegations as "Scandalous and Impertinent"

Nationstar and Everbank move to strike certain factual allegations in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). Specifically, Nationstar and Everbank point to (1) two paragraphs describing the "illegal, deceptive and unfair mortgage servicing practices" of Countrywide Home Loans Servicing LP, which is not party to this suit but claimed ownership of Plaintiff's mortgage in 2008; (2) five paragraphs outlining the "Perversion of Foreclosure Diversion," which allege that Defendants, and others in Philadelphia, abuse this

---

[3] Though not dispositive, it must be noted before moving on that Nationstar and Everbank offer a second argument for dismissal—that they are not subject to Section 406 because they are not residential mortgage lenders—which must be rejected. Section 406 applies to "residential mortgage lender[s]," which Section 101 defines as, "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt. *The term shall also include the holder at any time of a residential mortgage obligation.*" 41 P.S. § 101 (emphasis added). In their briefing, Nationstar and Everbank egregiously omit the second sentence in this definition, instead quoting only the first sentence, and asserting that they do not comply with that limited definition. It is clear from the allegations that Nationstar and Everbank fit within the second sentence of the definition. Nationstar and Everbank have by turns asserted and disclaimed possession and ownership of the note. Accordingly, Plaintiff has set forth sufficient allegations that Nationstar and Everbank were "holder[s]" of her mortgage note "at any time." *Id.*

loss mitigation process; and (3) two paragraphs setting out certain of Nationstar's representations regarding its own practices and the availability of "free" loan modification programs.

Rule 12(f) allows a court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Generally, courts view Rule 12(f) as providing a "drastic remedy," which should only be applied to "allegations that are so unrelated to the plaintiff's claims as to be unworthy of any consideration.'" *Brkovich v. Dynacom Indus., Inc.*, 2011 WL 7052128, at *1 (W.D. Pa. Nov. 10, 2011) (internal brackets omitted). Nationstar and Everbank have not demonstrated that this exceptional relief is warranted here. While some of the allegations may perhaps go beyond what is necessary to prove Plaintiff's claims, they generally provide relevant background regarding her mortgage and the various collection mechanisms it passed through before she filed suit. Further, some of the allegations—such as Nationstar's representations that loan modification programs were available for free to clients—are directly relevant to her claims. Accordingly, the motion to strike is denied.

An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____

WENDY BEETLESTONE, J.

Date: 10/10/2018